UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JENNIE M. COOK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00207-JCN |
| | ) | |
| USAA CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

**ORDER ON MOTIONS TO AMEND, TO JOIN A REAL PARTY,
AND TO REMAND TO STATE COURT**

In this action, Plaintiff alleges that Defendant USAA Casualty Insurance Company (USAA CIC) did not properly adjust her insurance claim following a fire at property she owned in Old Town, Maine. (First Amended Complaint, ECF No. 8.) The matter is before the Court on three related motions: Plaintiff seeks to amend her complaint (ECF No. 127) to join the United Services Automobile Association (USAA), as a defendant, which party she maintains is a necessary or real party (ECF No. 126), and, upon joinder of USAA, asks the Court to remand the case to state court (ECF No. 125) because the joinder of USAA would divest the Court of jurisdiction.

Following a review of the record, and after consideration of the parties' arguments, the Court denies Plaintiff's motions.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. The Plaintiff, the Property, and the Fire

On November 16, 2012, USAA CIC issued Policy No. 00278416380A to Plaintiff, insuring the real property located at 188 Veazie Street, Old Town, Maine (the property). (Defendant USAA CIC's Statement of Facts ¶¶ 1, 3, ECF No. 101, hereinafter DSMF.) Plaintiff paid all premiums and met all requirements of the policy. (Proposed Second Amended Complaint ¶ 8, ECF No. 127-1.) The property was occupied by tenants from July 2012 through July 2013 and was vacant after July 2013. (DSMF ¶ 6.) At that time, Plaintiff lived in Virginia. (*Id.* ¶ 11.)

In early September 2013, Plaintiff returned to Maine to make repairs to the property. (*Id.* ¶ 12.) On the morning of September 24, 2013, at approximately 7:00 a.m., a fire ignited and caused damage to the property. (*Id.* ¶¶ 16 – 18.)

### B. Legal Proceedings

On March 25, 2016, Plaintiff filed a complaint in Maine Superior Court (Kennebec County) against USAA CIC, in which complaint she asserted claims for breach of contract and unfair claims settlement practices. (ECF Nos. 1-2, 1-3.) USAA CIC removed the case to federal court, citing the Court's diversity jurisdiction over the matter. (ECF No. 1.) Plaintiff subsequently filed a motion to amend her complaint, which the Court granted. (ECF Nos. 6 – 7.)

---

[1] The facts are derived from various submissions in the case, including the parties' summary judgment filings.

After completion of discovery, USAA CIC moved for summary judgment. (ECF No. 100.) At oral argument on the motion, Plaintiff raised a possible jurisdictional issue based on Plaintiff's contention that a necessary party, USAA, had not been joined in the matter. Plaintiff subsequently filed the pending motions - the motion to amend the complaint, the motion to join a real party, and the motion to remand the matter to state court.[2] (ECF Nos. 125 – 127.)

**C.    The Relationship between USAA and USAA CIC**

USAA is a reciprocal inter-insurance exchange formed pursuant to Texas Insurance Code § 942.002(a). (Proposed Second Amended Complaint ¶ 12.) "Reciprocal insurance means insurance resulting from the mutual exchange of insurance contracts among persons in an unincorporated association under a common name through an attorney-in-fact having authority to obligate each person both as insured and insurer." *Haney v. USAA Cas. Ins. Co.*, 331 F. App'x 223, 229 (4th Cir. 2009) (quoting North Carolina law, internal quotation marks omitted). Under Texas law:

> The statute provides that "subscribers . . . may exchange reciprocal or interinsurance contracts with other subscribers . . . to provide indemnity

---

[2] Plaintiff contends that if USAA is joined as a party, the Court's diversity jurisdiction would be defeated. "The statutory grant of federal jurisdiction in diversity cases gives district courts 'original jurisdiction of all civil actions where the matter in controversy . . . is between . . . citizens of different States.' 28 U.S.C. § 1332(a). This statutory grant requires complete diversity between the plaintiffs and defendants in an action." *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). The "complete diversity" requirements "means that diversity jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant." *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 53–54 (1st Cir. 2009). USAA is an unincorporated association of subscribers that have mutually agreed to insure each other. "So long as such an entity is unincorporated . . . it possesses the citizenship of all its members." *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016). Plaintiff, therefore, contends that because USAA has members in every state, USAA would be considered a citizen of the same state as Plaintiff (Virginia).

> among those subscribers for a loss for which insurance coverage may be obtained under other law." Tex. Ins. Code Ann. § 942.002(a).
>
> A "subscriber" is defined as "an individual, partnership, or corporation who, through an attorney in fact, enters into a reciprocal or interinsurance contract." *Id.* § 942.001(4). A "reciprocal or interinsurance contract" is defined as "an insurance policy or other contract that provides indemnity among a group of subscribers for certain losses," *id.* § 942.001(3), and the statute provides that such a contract may be executed by an attorney in fact appointed by the subscribers of an exchange, *id.* § 942.051.

*True v. Robles*, 571 F.3d 412, 415 (5th Cir. 2009). USAA has subscribers in all states. (Proposed Amended Complaint ¶ 5.) Plaintiff originally became a member of USAA when she subscribed to a USAA automobile insurance policy. (*Id.* ¶ 44.)

USAA CIC is an indemnity insurance company incorporated and licensed in Texas, with a principal place of business in San Antonio, Texas. (*Id.* ¶ 3.) USAA CIC is a wholly owned affiliate of USAA. (*Id.* ¶¶ 3, 24.) All of the USAA affiliates have the same principal and legal address in San Antonio. (*Id.* ¶ 20.) The USAA affiliates are managed by the members of USAA's Executive Counsel. (*Id.* ¶ 26.) USAA purchases sales, marketing, management and other services from its affiliates. (*Id.* ¶ 27.) Certain expenses are allocated by USAA to its affiliates according to various formulas for services such as rental or office space, utilities, mail processing, salaries, and employee benefits. (*Id.*) The USAA Group files a consolidated federal income tax return which includes the wholly owned domestic subsidiaries. (*Id.*)

The first page of the policy contains the title "Fire Policy Packet" with the USAA logo in the upper left corner. (ECF No. 101-2 at 3.) On the Declarations pages, the USAA logo appears in the upper left corner, and the center top in smaller letters reads "USAA

CASUALTY INSURANCE COMPANY." (*Id.* at 5 – 6.) There is a "Quick Reference" page with the title "YOUR DWELLING POLICY" in large letters. (*Id.* at 7.) The USAA logo appears in the upper left corner next to the words "USAA GROUP." (*Id.*)

The Quick Reference page is divided into two columns. (*Id.*) The left column contains an outline of the policy provisions, and the right column contains the heading in ordinary size text: "RECIPROCAL PROVISIONS. . .apply when United Services Automobile Association, or USAA is named on the Declarations as the company." (*Id.*) Further below, the policy reads: "In your policy these sets of words have the same meaning: Policy means Contract; You, Your or Insured means Subscriber. We, us, our, USAA or Company means Reciprocal or Interinsurance Exchange[.]" The same column also states: "Your Policy is issued as part of an Interinsurance Exchange by the President of USAA as Attorney-in-Fact under the authority given him by the subscribers." The column contains the following language: "Participation: By purchasing this policy, you are a member of USAA and subject to its bylaws. You are entitled to dividends as may be declared by us . . . ." (*Id.*)

Many pages of standardized policy language, exclusions, and endorsements follow the Quick Reference page. (*Id.* at 8 – 42.) "USAA Confidential" is stamped in a rectangle at the bottom of every page of the packet. (*Id.* at 1 – 42.)

The settlement remittances and statement that Plaintiff received after the fire were forwarded by a cover with the letter-head imprinted with the USAA logo and address. (*Id.* ¶¶ 34, 36.) The remittances were made by USAA, drawn on the wholly owned USAA Federal Savings Bank without reference to an affiliate. (*Id.* ¶ 35.) The settlement

remittances were issued with the signature of Dennis P. McLaughlin, above the lines "Large Loss Operations," "USAA Casualty Insurance Company," and "USAA CLAIMS." (*Id.* ¶ 37.)

## DISCUSSION

**A. Legal Standard**

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "once as a matter of course," subject to certain time constraints. However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

The standard is elevated when the motion to amend is filed after the court's scheduling order deadline for amendment of pleadings. A motion to amend that is filed beyond the deadline established in a scheduling order requires an amendment of the scheduling order. To obtain an amendment of the scheduling order, a party must demonstrate good cause. *Johnson v. Spencer Press of Maine, Inc.*, 211 F.R.D. 27, 30 (D. Me. 2002); *El–Hajj v. Fortis Benefits Ins. Co.,* 156 F. Supp. 2d 27, 34 (D. Me. 2001); Fed.

6

R. Civ. P. 16(b)(4). A court's decision on good cause "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir. 2004). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" *Id.* (quoting *Acosta–Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 52 (1st Cir. 1998)).

Additional considerations are relevant when a plaintiff seeks to join a new party. "Fed. R. Civ. P. 21 requires a party to file a motion and obtain leave of court to add additional parties." *MacFarlane v. McKean*, 4 F.3d 982 (1st Cir. 1993). Rule 21 provides the district court with discretion to add or drop parties. "Although Rule 21 permits the addition of a new party at any stage, the court typically will deny a request that comes so late in the litigation that it will delay the case." *Giannetta v. Boucher*, 981 F.2d 1245 (1st Cir. 1992) (internal quotation marks omitted).

The legal standard also differs where, as in this case, a party seeks to join a party that would defeat a court's subject matter jurisdiction. *See Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 22 (1st Cir. 2005) ("The addition of a non-diverse defendant in an amended complaint defeats diversity"). "[A] district court, when confronted with an amendment to add a nondiverse nonindispensable party, should use its discretion in deciding whether to allow that party to be added." *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675 n.8 (1st Cir. 1994) (quoting *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987)). "Although leave to amend a complaint well before trial is ordinarily freely

given in accordance with Federal Rule of Civil Procedure 15(a)(2), requests to amend that may result in remand pursuant to § 1447(e) require additional scrutiny." *Maille v. United Parcel Serv., Inc.*, No. 2:08-CV-66-GZS, 2008 WL 2164566, at *1 (D. Me. May 21, 2008).

Consistent with the need for additional scrutiny, the removal statute, 28 U.S.C. § 1447, provides in relevant part: "If after removal [from state court] the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In such circumstances, "[t]he Court must balance the equities by considering 'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.'" *Maille*, 2008 WL 2164566, at *1 (quoting *Hensgens* 833 F.2d at 1182).[3]

**B.      Plaintiff's Motions**

Plaintiff contends USAA is the real party in interest or a necessary party to this matter and, therefore, joinder is required. Plaintiff's arguments are unpersuasive.

---

[3] Plaintiff contends the analysis in cases in which "fraudulent joinder" or "procedural misjoinder" is an issue should inform the Court's analysis in this case. The reasoning of courts that have discussed the "fraudulent joinder" or "procedural misjoinder" doctrine, s*ee e.g.*, *Sturm v. United Servs. Auto. Ass'n*, No. C 12-01810 WHA, 2012 WL 2135356, at *2 (N.D. Cal. June 12, 2012), does not control. The removal statute "entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under the fraudulent or procedural misjoinder doctrine, which is designed to prevent a plaintiff's attempt to prevent removal, federal courts will ignore a nondiverse defendant joined in the case in state court if the defendant seeking removal can "demonstrate[ ] that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The doctrine appears to apply at the initial stages of a case, when a nondiverse party is already a defendant.

An entity is "indispensable" and must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Where a plaintiff seeks to join a purported indispensable defendant, the rules governing indispensable parties and the rules governing the removal of cases from state to federal court interact as follows:

> If the [proposed] defendant is indispensable, the district court's choices are limited to denying joinder and dismissing the action pursuant to Fed. R. Civ. P. 19, or else allowing joinder and remanding the case to the state court pursuant to § 1447(e). If, on the other hand, the defendant is dispensable, the district court has the options, pursuant to § 1447(e), of denying joinder and continuing its jurisdiction over the case, or permitting joinder and remanding the case to state court.

*Casas Office Machines*, 42 F.3d at 675 (internal citations omitted).

Here, the record lacks any evidence to suggest that USAA has an independent interest that would be impaired if the matter proceeded as Plaintiff has asserted against USAA CIC. In addition, the fact that Plaintiff seeks leave to proceed against both USAA and USAA CIC, with joint and several liability, suggests USAA is not an indispensable party. *See id.* at 677 ("It is well-established that joint tortfeasors are generally not indispensable parties"); *In re Olympic Mills Corp.*, 477 F.3d 1, 10 (1st Cir. 2007) ("[I]t is

clear that co-obligors generally are not indispensable parties in contract disputes that do not involve reformation, cancellation, rescission, or otherwise challenge the validity of the contract"). Furthermore, if Plaintiff establishes liability, the record lacks any evidence that Plaintiff could not achieve full satisfaction on her loss from USAA CIC. USAA is thus not an indispensable party.

The factors relevant to the Court's exercise of its discretion on a motion to amend to join a party also militate against the relief Plaintiff seeks. The case has been pending for nearly three years, and Plaintiff seeks to join a new party long after the discovery closed and after Defendant filed a motion for summary judgment.

In addition, the Court discerns little or no prejudice to Plaintiff if the Court denies her motions to amend and join a party. USAA CIC does not dispute that it issued the policy and is responsible for Plaintiff's loss. The record also contains no evidence that USAA CIC lacks sufficient assets to satisfy any judgment against it. Finally, even if Plaintiff were permitted to pursue a claim against USAA, Plaintiff has failed to demonstrate that USAA's obligations are different from the responsibilities of USAA CIC or that Plaintiff's ability to prove liability against USAA differs in any material way than against USAA CIC. *See Tran v. Farmers Grp., Inc.*, 128 Cal. Rptr. 2d 728, 737 (Cal. Ct. App. 2002), as modified on denial of reh'g (Jan. 27, 2003) ("[W]e agree with respondents that the fiduciary duties flowing from their status should not be significantly disproportionate to the obligations owed by the management of other kinds of insurance organizations").

While the prejudice to Plaintiff of the denial of her motions would be minimal, if any, the prejudice to USAA CIC could be significant given the inevitable delay in the

resolution of the matter if a new party is joined.[4]  For several reasons, including a change in Plaintiff's counsel, the matter has been pending for three years.  Discovery has closed, and USAA has filed a motion for summary judgment.  The joinder of a new party at this stage would undoubtedly require additional discovery and thus further delay the resolution of the matter.

In short, USAA is not an indispensable party and Plaintiff has not otherwise established that amendment of the pleadings to join USAA as a party at this stage of proceedings is warranted.

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiff's motion to amend the complaint (ECF No. 127), denies Plaintiff's motion to join USAA as a defendant (ECF No. 126), and denies Plaintiff's motion to remand the case to state court (ECF No. 125).

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of June, 2019.

---

[4] To the extent Plaintiff contends she would be prejudiced because the matter would not be remanded to state court, Plaintiff's argument is unavailing. That is, if the "purpose of the amendment is to defeat federal jurisdiction," that purpose weighs against joinder.  *Hensgens* 833 F.2d at 1182.